UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMEEL GORDON,

               Plaintiff,

      v.                                     23-CV-640-LJV
                                            ORDER
THE STATE UNIVERSITY AT BUFFALO,
*et al.*,

               Defendants.
_____

On July 5, 2023, the *pro se* plaintiff, Jameel Gordon, filed a complaint asserting claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964 ("Title VI"). Docket Item 1.  This Court previously granted Gordon permission to proceed *in forma pauperis* and screened his claims under 28 U.S.C. § 1915(e)(2).  Docket Item 3.  In that screening order, the Court found that Gordon's claims were subject to dismissal but gave him leave to amend those claims.  *Id.*

Gordon now has filed an amended complaint alleging that the defendants—a group of individuals and entities associated with the "State University [of New York] at Buffalo" ("UB" or the "University")—violated his Fourteenth Amendment rights.  Docket Item 4.  The Court liberally construes the amended complaint as asserting claims under 28 U.S.C. § 1983 and screens the amended complaint under section 1915(e)(2)(B).[1]  For the following reasons, some of Gordon's claims may proceed to service but others are dismissed under section 1915(e)(2)(B).

_____

[1] The amended complaint does not reassert a Title VI claim.  *See* Docket Item 4.  The Court therefore deems Gordon's Title VI claim to be withdrawn.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint in a civil action "at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  *See* 28 U.S.C. § 1915(e)(2).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas*, 480 F.3d at 639; *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))).  But leave to amend pleadings may be denied when any amendment would be "futile."  *Cuoco*, 222 F.3d at 112*.*

## I.    SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro*

*se* complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim.  *See id.* (concluding that district court properly dismissed *pro se* complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*).  And even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Gordon has sued ten defendants: UB; the "State University of New York"; the "University at Buffalo Regional Institute"; "Blackstone Incorporated"; Rick Gardner, the "Associate Vice President for Economic Development at the University at Buffalo Business Entrepreneurship Partnership Department"; Keiah Shauku, the "Open4 Program Director at University of Buffalo Regional Institute"; Hadar Borden, the "Director of [t]he Blackstone Launchpad at [UB]; "Empire State Development"; "43 North"; and "NY Ventures."[2]  Docket Item 4 at 2.  He alleges that the defendants

---

[2] The Court assumes that "Blackstone Incorporated" and the "Blackstone Launchpad" are the same entity.

discriminated against him by not providing funding to his business venture and by promoting individuals of other races and genders as entrepreneurs. *See id.* at 3-4. A liberal reading of the amended complaint tells the following story.

In August 2022, Gordon was accepted at UB and learned about the University's "entrepreneurship program," called the "Blackstone Launchpad Program" ("Blackstone"). *Id.* at 3. "[M]embers of [Gordon's] academic department" suggested that he participate in Blackstone because he "was interested in launching a business venture while completing [his] degree." *Id.*

Gordon met with defendant Borden, the Director of Blackstone, but she told Gordon that he was "'too advanced' of an entrepreneur for her to work with." *Id.* Nevertheless, Borden "invited [Gordon] to participate in the program throughout the semester," which Gordon did. *Id.*

While he attended the Blackstone program, Gordon "continued [] networking" with members of the UB and broader Buffalo communities. *Id.* Eventually, he "launch[ed] and hous[ed] [his] business venture within . . . the University's Baird Research Center," which was overseen by defendant Gardner. *Id.*

Gordon "hope[d] [to] receiv[e] funding" and assistance with "further development" for his business venture through the University at Buffalo Regional Institute. *Id.* But when he tried to connect with Laura Quebral, who worked at the Institute, his "communication was intercepted by [defendant] Keiah Shauku[,] a [P]rogram [D]irector with the Regional Institute." *Id.* Gordon met with Shauku and "shared more about [his] business venture," which he likened to Google. *Id.* Shauku responded that the

founders of Google "came from communities with deep pockets."  *Id.*  Gordon was

"surprised" but "not discouraged" by Shauku's statement.  *Id.*

Gordon "continued to develop [his] venture independently of the University," but

he encountered "discrimination and discriminatory actions."  *Id.*  For example, "Borden

and her team" at Blackstone used the "slogan, 'This is what an entrepreneur looks like,'"

but that campaign "centered predominantly around East Indian, white, and female

students."  *Id.*  The slogan also was used to promote a white male entrepreneur,

Dominic LaVigne.  *Id.* at 3-4.  Gordon, who is a Black man, was told that "perhaps [he]

should locate [his] business" in the "predominantly [B]lack neighborhoods on the East

Side of Buffalo and off the University campus."  *Id.* at 4.

Gordon also believes that he was "barred from continuing [his business's

development] through the University's ecosystem because [he] refused to work with [the

University's] business partners and wanted to continue [his business's] development

with [his] own selected partners as a family business."  *Id.* at 4; *see also id.* (alleging

that after Gordon emphasized his "intent to remain independent" and "develop [his]

venture as a family business," he "experienced additional obstruction and

discrimination").  Gordon was invited "to join the Empire State Development and

43[ ]North at a '0 to 1' – Investment & Resources for Startups event" and to "meet with

members of NY Ventures and the Division of Science, Technology, and Innovation of

New York State."  *Id.*  Gordon "declin[ed] the invit[ations] because [he] had no interest in

working with . . . th[o]se entities."  *Id.*  He then was "completely blocked out of the

entirety of the University's Entrepreneurship ecosystem and [its] funding."  *Id.*  And after

he was denied "additional support" and "additional funding," Gordon was told "by

members of the Business Entrepreneurship Partnership department that [his] company had 'graduated.'"  *Id.*

Gordon alleges that he will "only [be] able to participate in economic development in the [Buffalo] region" if he works with the defendants "on their terms."  *Id.*  And he alleges that the defendants' actions are a "gross and inherent violation of his [F]ourteenth [A]mendment rights to be able to develop his family business freely without obstruction and discrimination."  *Id.*

## II.    SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Gordon alleges that the defendants have violated his Fourteenth Amendment rights by (1) failing to fund his private business venture; and (2) discriminating against him by promoting students of other races and genders.  *See generally* Docket Item 4.

6

Liberally construed, those allegations assert claims under the Equal Protection Clause and the Due Process Clause.

### A.   Empire State Development, 43 North, and NY Ventures

But Gordon does not allege that Empire State Development, 43 North, or NY Ventures were involved in the discrimination he allegedly experienced.  *See id.*  Nor does he allege that those entities denied funding to his business venture.  *See id.*  Rather, Gordon simply alleges that Empire State Development, 43 North, and NY Ventures were present at an "Investment & Resources for Startups event on June 13th, 2023," and that he declined an invitation to that event "because [h]e had no interest in working with . . . th[o]se entities."  *Id.* at 4.  Those allegations do not suggest that Empire State Development, 43 North, or NY Ventures played any part in the discrimination and funding denial that Gordon allegedly experienced, as is required to maintain a claim against those entities.  *See Tangreti*, 983 F.3d at 618.

Gordon's claims against Empire State Development, 43 North, and NY Ventures therefore are dismissed for failure to state a claim under section 1983.

### B.   The Remaining Defendants

Gordon alleges that the other seven defendants—all connected with the State of New York or its university system—violated the Fourteenth Amendment by discriminating against him because of his race and gender and by refusing to fund his business venture for those reasons as well.  *See* Docket Item 4 at 3-4.  Those allegations present "colorable claim[s]" and therefore survive screening under 28 U.S.C. § 1915(e)(2).  *See Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device which is

warranted only when the complaint lacks an arguable basis either in law or in fact [or is] frivolous on its face or wholly insubstantial." (citations omitted)); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (explaining that dismissal under Federal Rule of Civil Procedure 12(b)(6) still may be appropriate notwithstanding a court's earlier finding that the complaint was not "frivolous" for purposes of section 1915(e)(2)).

Gordon's claims against the remaining seven defendants therefore may proceed to service.

## CONCLUSION

Gordon's section 1983 claims against Empire State Development, 43 North, and NY Ventures are dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim. His section 1983 claims against the remaining seven defendants, however, may proceed to service.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that Gordon's claims against Empire State Development, 43 North, and NY Ventures are dismissed, and the Clerk of the Court shall terminate Empire State Development, 43 North, and NY Ventures as defendants in this action; and it is further

ORDERED that the Clerk of the Court shall file Gordon's papers and cause the United States Marshal to serve copies of the summons, the amended complaint, and this order upon the remaining defendants without Gordon's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Gordon's favor; and it is further

ORDERED that Gordon must effect service within 90 days of the date the summons is issued.  It is Gordon's responsibility to inquire of the Marshals at 716-348-5300 as to whether service has been made and, if necessary, to request an extension of time for service.  *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012).  If, within 90 days of issuance of the summons, Gordon has not made service or requested an extension of time in which to do so, the Court may dismiss this action for failure to prosecute under Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office, at <Michael.Russo@ag.ny.gov>; and it is further

ORDERED that Gordon shall notify the Court in writing if his address changes. The Court may dismiss the action if Gordon fails to do so.


SO ORDERED.


Dated:      October 10, 2023
            Buffalo, New York


                                     */s/ Lawrence J. Vilardo*
                                     LAWRENCE J. VILARDO
                                     UNITED STATES DISTRICT JUDGE