UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMEEL GORDON,

        Plaintiff,

        v.

THE STATE UNIVERSITY AT BUFFALO
et al.,

        Defendants.

_____

23-CV-640-LJV
DECISION & ORDER

On July 5, 2023, the pro se plaintiff, Jameel Gordon, filed a complaint asserting

claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964 ("Title VI").

Docket Item 1.  The Court granted Gordon permission to proceed in forma pauperis,

screened his complaint under 28 U.S.C. § 1915(e)(2), and gave him leave to amend.

Docket Item 3.  Gordon then filed an amended complaint alleging that the defendants—

Blackstone Incorporated ("Blackstone"), the State University of New York at Buffalo

("UB"), and a group of individuals and entities associated with UB—violated his

Fourteenth Amendment rights.  Docket Item 4.  And the Court then screened the

amended complaint, dismissing the claims against three defendants—Empire State

Development, 43 North, and NY Ventures—and allowing the claims against the

remaining defendants to proceed.  Docket Item 5.

On May 28, 2024, Blackstone moved to dismiss the amended complaint for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Docket Item 11.

Gordon responded, Docket Item 16, and filed a cross-motion to amend that included a

proposed second amended complaint adding The Blackstone Charitable Foundation as

a defendant, Docket Item 17 at 16-17, 20.[1]  After Blackstone replied in further support of its motion to dismiss and opposed the cross-motion to amend, Docket Item 19, Gordon filed a sur-reply,[2] Docket Item 20.

On January 15, 2025, defendants Hadar Borden and UB (the "UB defendants") moved to dismiss the amended complaint for insufficient service of process and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), respectively.  Docket Item 25.  Gordon opposed the motion, Docket Item 27; Borden and UB replied, Docket Item 28; and Gordon filed another sur-reply,[3] Docket Item 30.

---

[1] Page numbers in docket citations refer to ECF pagination.

[2] Blackstone moved to strike Gordon's sur-reply.  Docket Item 22.  But in light of Gordon's pro se status, the Court denied the motion to strike.  Docket Item 24.

[3] Gordon also moved to recuse the New York Attorney General, whose office represents the UB defendants, and to appoint independent counsel, alleging that there is an "irreconcilable conflict because the Attorney General cannot objectively defend state officials accused of discrimination while also ensuring the fair administration of justice" and that it is not the Attorney General's duty to "shield state actors from accountability for constitutional violations."  Docket Item 29 at 2.  But a plaintiff's "vague, general allegations that the Attorney General's Office's representation conflicts [with] its mission are insufficient to justify the strongly disfavored relief of disqualification." *Weiss v. City Univ. of N.Y.*, 2019 WL 5891894, at *5 (S.D.N.Y. Nov. 10, 2019).  Indeed, the Attorney General is statutorily obligated to "defend all actions and proceedings in which the state is interested."  N.Y. Exec. Law § 63(1).  And state employees are generally entitled to representation by the Attorney General in proceedings "arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties; or which is brought to enforce . . . [section 1983] of title forty-two of the United States code."  N.Y. Pub. Off. Law § 17(2)(a).  Therefore, "implementing [Gordon]'s theory of the law would result in the Attorney General's Office being unable to ever defend state employees against allegations of wrongdoing, rendering the statute[s] meaningless." *See Weiss*, 2019 WL 5891894, at *5.  The Court therefore denies Gordon's motion to recuse the New York Attorney General.

For the reasons that follow, the Court grants Blackstone's motion to dismiss but denies the UB defendants' motion to dismiss.  The Court also denies Gordon's motion to amend.

## BACKGROUND[4]

In August 2022, Gordon was accepted as a student at UB.  Docket Item 4 at 3. At that time, he learned about the University's "entrepreneurship program," called the "Blackstone Launchpad Program."  *Id.*  "[M]embers of [Gordon's] academic department" suggested that he participate in the Blackstone Launchpad Program because he "was interested in launching a business venture while completing [his] degree."  *Id.*

Gordon therefore met with Borden, the Director of the Blackstone Launchpad Program.  *Id.*  But at that meeting, Borden told Gordon that he was "'too advanced' of an entrepreneur for her to work with."  *Id.*  Nevertheless, Borden "invited [Gordon] to participate in the program throughout the semester," which Gordon did.  *Id.*

Through the Blackstone Launchpad Program, Gordon engaged in "continued . . . networking" with members of the UB and broader Buffalo communities.  *Id.*  Eventually, he "launch[ed] and hous[ed] [his] business venture within . . . the University's Baird Research Center," which was overseen by defendant Rick Gardner.  *Id.*

---

[4] The Court takes these facts from the amended complaint.  Docket Item 4.  On a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Gordon "hope[d] [to] receiv[e] funding" and assistance with "further development" for his business venture through the UB Regional Institute. *Id.* But when he tried to connect with Laura Quebral, who worked at the Regional Institute, his "communication was intercepted by [defendant] Keiah Shauku[,] a program director with the Regional Institute." *Id.* Gordon met with Shauku and "shared more about [his] business venture," which he likened to Google. *Id.* But Shauku responded that the founders of Google "came from communities with deep pockets." *Id.* Gordon was "surprised" but "not discouraged" by Shauku's statement. *Id.*

As Gordon "continued to develop [his] venture independent[] of" UB, he encountered "discrimination and discriminatory actions." *Id.* For example, "Borden and her team" at the Blackstone Launchpad Program used the "slogan, 'This is what an entrepreneur looks like,'" and that campaign "centered predominantly around East Indian, white, and female students." *Id.* The slogan also was used to feature a white male entrepreneur, Dominic LaVigne. *Id.* at 3-4. Gordon, who is a Black man, was told that "perhaps [he] should locate [his] business" in the "predominantly [B]lack neighborhoods on the East Side of Buffalo and off the [UB] campus." *Id.* at 4.

Nevertheless, Gordon continued to develop his business venture. *Id.* He was committed to "remain[ing] independent" of UB, and he "intended to develop [his] venture as a family business." *Id.* But in doing so, he "experienced additional obstruction and discrimination." *Id.*

Gordon was invited "to join the Empire State Development and 43[ ]North at a '0 to 1' – Investment & Resources for Startups event" and to "meet with members of NY Ventures and the Division of Science, Technology, and Innovation of New York State."

4

*Id.*  But Gordon "declin[ed] the invit[ation] because [he] had no interest in working with . . . th[o]se entities."  *Id.*  He then was "completely blocked out of the entirety of the University's Entrepreneurship ecosystem and [its] funding."  *Id.*  And after he was denied "additional support" and "additional funding," Gordon was told "by members of the Business Entrepreneurship Partnership department that [his] company had 'graduated.'"  *Id.*

On July 5, 2023, Gordon commenced this action.  Docket Item 1.  He believes that he was "barred from continuing [his business's development] through [UB]'s ecosystem because [he] refused to work with [UB's] business partners and wanted to continue [his business's] development with [his] own selected partners as a family business."  Docket Item 4 at 4.  He alleges that he will "only [be] able to participate in economic development in the [Buffalo] region" if he works with the defendants "on their terms."  *Id.*  And he alleges that the defendants' actions are a "gross and inherent violation of his [F]ourteenth [A]mendment rights to be able to develop his family business freely without . . . obstruction and discrimination."  *Id.*

## LEGAL PRINCIPLES

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."  *Jackson v. City of New York*, 2015 WL 4470004, at *4 (S.D.N.Y. Jun. 26, 2015) (citation and internal quotation marks omitted).  "In deciding a Rule 12(b)(5) motion, a Court must look to [Federal] Rule [of Civil Procedure] 4, which governs the content, issuance, and service of a summons."  *Deluca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  On a motion to dismiss, "the plaintiff bears the burden of establishing that service was sufficient."

5

*Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (citation and internal quotation marks omitted), *aff'd*, 626 F. App'x 297 (2d Cir. 2015). And the Court can consider information outside the pleadings to determine whether service was sufficient. *Wilson v. Cuomo*, 2022 WL 4644695, at *3 (E.D.N.Y. Aug. 28, 2022). Courts must resolve issues related to insufficient service of process before addressing any arguments on the merits because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Inc. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but that presumption is not afforded to "legal conclusions." *Id.* at 678-79. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

**I.    BLACKSTONE'S MOTION TO DISMISS**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).  The complaint must at least "allow[] the court to draw the reasonable inference that the defendant is liable."  *Iqbal*, 556 U.S. at 678.

Blackstone argues that the action must be dismissed against it because (1) the amended complaint made no allegations against it, (2) Blackstone is not the same entity as the Blackstone Launchpad Program that Gordon takes issue with, and (3) Gordon has not stated a claim under section 1983.  Docket Item 11-1 at 9-10.

The amended complaint does not make a single factual allegation concerning Blackstone.  *See generally* Docket Item 4.  In fact, Gordon "acknowledges the distinction between Blackstone and [UB]'s Blackstone Launchpad Program" but argues that the motion to dismiss should be denied because "[t]he amended complaint includes the actions of entities associated with Blackstone Inc."  Docket Item 16 ¶ 3.  It is unclear

from the amended complaint, however, how Blackstone is "associated" with the other parties.  *See generally* Docket Item 4.

Blackstone asserts that "[UB]'s Blackstone Launchpad Program, The Blackstone Charitable Foundation, and . . . Blackstone Inc. are separate, distinct entities" and that UB's Blackstone Launchpad Program is not administered or funded by Blackstone Inc. Docket Item 11-1 at 10; *see also* Docket Item 11-4 at 2; Docket Item 11-5 at 2.[5]  And Gordon agrees that it is The Blackstone Charitable Foundation—not Blackstone—that funds UB's Blackstone Launchpad.  *See* Docket Item 16 at 2.

Because the amended complaint includes no factual allegations against Blackstone—indeed, because it does not say anything about how Blackstone played any role in this case—Blackstone is entitled to dismissal.

Moreover, "[i]n order to state a claim under [section] 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).  And the complaint says nothing about how Blackstone is either of those.

The Second Circuit has "identified three main tests to determine" whether an otherwise private entity, such as Blackstone, engaged in state action:

> (1) whe[ther] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) whe[ther] the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); and

---

[5] Blackstone asks the Court to take judicial notice of two documents: the State of Delaware Entity Details for The Blackstone Charitable Foundation, Docket Item 11-4, and the State of Delaware Entity Details for Blackstone Inc., Docket Item 11-5.  But the Court need not consider that request because Gordon agrees that The Blackstone Charitable Foundation—and not Blackstone Inc.—funds the Launchpad program.  *See* Docket Item 16 at 2.

(3) whe[ther] the entity has been delegated a public function by the state ('the public function test').

*See Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022) (alterations omitted) (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).  "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state."  *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a [section] 1983 claim against the private entity."  *Ciambriello*, 292 F.3d at 324.

As already discussed, the amended complaint contains no allegations regarding Blackstone, much less allegations about how Blackstone acted in concert with the state.  *See generally* Docket Item 4.  And Gordon's opposition to the motion to dismiss states only the conclusion that "the allegations in the amended complaint demonstrate that Blackstone acted 'under the color of law.'"  Docket Item 16 at 2.

Because the amended complaint is devoid of any factual allegations regarding Blackstone or the role it played in this case, the Court is unable to draw a "reasonable inference that [Blackstone] is liable for the misconduct alleged."  *See Iqbal*, 556 U.S. at 678.  And because the amended complaint says nothing about how Blackstone acted under color of state law, there is no plausible claim that Blackstone is liable under section 1983.  Blackstone's motion to dismiss therefore is granted.  But in light of Gordon's pro se status, he may amend his complaint to state a claim against Blackstone if he is able to do so.  In any amended complaint, Gordon must clearly identify how Blackstone violated his rights while acting under the color of state law.

## II.   THE UB DEFENDANTS' MOTION TO DISMISS

### A.   Service of Process

UB and Borden first contend that this Court lacks personal jurisdiction over them because they were not properly served.  Docket Item 25-1 at 11-13.  More specifically, they argue that they "were not served by any process described under [Rule] 4(e)(2)" or under New York C.P.L.R. § 308(2).  *Id.* at 12 (emphasis omitted).  Gordon does not dispute this; indeed, he does not address the defendants' insufficient service argument at all.  *See generally* Docket Item 27.

Federal Rule of Civil Procedure 4 provides the methods by which a plaintiff may serve a defendant.  An individual may be served by (1) "delivering a copy of the summons and of the complaint to the individual personally"; (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process"; or (4) "following state law for serving a summons . . . in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e).

New York law authorizes service of process by two methods not explicitly included in Rule 4—what are commonly called "substituted service" and "nail-and-mail" service.  *See Smith v. Smith*, 2020 WL 6334794, at *2 (E.D.N.Y. Oct. 29, 2020).  A plaintiff may effect substituted service "by delivering the summons . . . to a person of suitable age and discretion at the actual place of business, dwelling place[,] or usual place of abode of the person to be served and by [] mailing the summons to the person to be served at his or her last known residence or . . . actual place of business."  N.Y. C.P.L.R. § 308(2).  A plaintiff may effect nail-and-mail service by "affixing the summons

to the door of [] the actual place of business, dwelling place[,] or usual place of abode . . . of the person to be served" and mailing the summons to the person to be served "at his or her last known residence or . . . actual place of business." *Id.* § 308(4).

The UB defendants contend that they were not served by any of the means provided in Rule 4(e)(2). Docket Item 25-1 at 12. They add that Gordon cannot show that "he or anyone [else] mailed the [s]ummons and [c]omplaint to the[ir] actual place of business." *Id.* at 13. In fact, they claim that "no other attempts at proper service" have been made since Gordon filed the amended complaint, *id.*, despite this Court's warning that it was Gordon's "responsibility to inquire of the Marshals . . . as to whether service ha[d] been made" and that failure to do so could result in dismissal, *see* Docket Item 9.

Because the "burden of establishing that service was sufficient" is on the plaintiff, *Ahluwalia*, 63 F. Supp. 3d at 260, and because Gordon has not said anything to rebut the UB defendants' assertion that they have not been served, the Court presumes that service was insufficient.

If a plaintiff "shows good cause" for the failure to serve a defendant, however, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). In evaluating good cause, a court considers "the plaintiff's reasonable efforts to effect service." *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432-33 (S.D.N.Y. 2016) (citation omitted). And "[e]ven in the absence of good cause, . . . district courts have discretion to grant extensions of time to effect proper service." *Id.* at 433.

But courts will not afford plaintiffs an opportunity to correct inadequate service when such exercise would be futile. *See Black v. Vitello*, 841 F. App'x 334, 336 (2d Cir.

11

2021) (summary order) (holding that the district court did not err in dismissing the case with prejudice because in addition to plaintiff's failure to timely serve defendants, there was no set of facts that would support her claims).  Courts "may dismiss a case with prejudice where '[t]he problem with [the plaintiff's] causes of action is substantive' and 'better pleading will not cure it.'"  *Id.* (alterations in original) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d. Cir. 2000)).

As explained below, under the liberal pleading standard afforded to pro se plaintiffs, Gordon's claims against the UB defendants survive their motion to dismiss. Therefore, giving Gordon additional time to serve those defendants would not be futile. Gordon has 90 days from the entry of this decision and order to effect proper service. If, consistent with Rule 4, Gordon serves the summons and complaint within that time, any defendants who have been served shall answer or otherwise respond to the complaint as provided in Federal Rule of Civil Procedure 12(a).  If Gordon fails to effect proper service within 90 days, then the UB defendants—and any other defendants who choose to do so—may move to dismiss on that basis.[6]

### B.    Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in

---

[6] The remaining defendants—The State University of New York, Gardener, Shauku, and the UB Regional Institute—have not answered or responded to the amended complaint in any way.  It therefore may be that they also have not been properly served.  Gordon has 90 days to effect proper service on any and all defendants or he risks dismissal of this action against them.

other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).  As the Second Circuit recently explained, "[t]he doctrine of standing gives meaning to the[] constitutional limits[] by requiring a plaintiff to allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal[ ]court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Antonyuk v. James*, 120 F.4th 941, 976 (2d Cir. 2024) (some internal quotation marks omitted) (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015)); *see also TransUnion*, 594 U.S. at 430-31 (stating that the plaintiff— "[a]s the party invoking federal jurisdiction"—"bear[s] the burden of demonstrating . . . standing").

"[T]o establish standing, a plaintiff must show" three things: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992)).  "A plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim."  *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65-66 (2d Cir. 2012)).  The UB defendants say that Gordon cannot establish any of the three elements.  Docket Item 25-1 at 14-15.

"To establish injury in fact, a plaintiff must show that he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339

13

(2016).  "[T]o be 'particularized,' [an injury] 'must affect the plaintiff in a personal and individual way.'"  *Id.* (citing *Lujan*, 504 U.S. at 560 n.1).

The UB defendants argue that "[n]one of the facts show that [Gordon] suffered any real harm" because the "facts are merely conclusory allegations and are not specific."  Docket Item 25-1 at 15.  They add that Gordon "has not sufficiently pleaded a legally protected interest" because he is not "entitled to any property interest" from them.  *Id.* at 14.

But construing the amended complaint liberally, *see Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest), Gordon alleges that he was injured by the discriminatory practices of UB and Borden— more specifically, by their refusing to provide funding and other opportunities for Gordon's business venture because he is Black while funding and promoting students of other races and genders.  Docket Item 4 at 3-4.  The UB defendants may well be correct that Gordon is not entitled to funding for his business venture, Docket Item 25-1 at 14, but even so, he has the right to be free from discrimination with respect to his participation in UB's programs, *see* 42 U.S.C. § 2000d.  Gordon pleads that he has a "[F]ourteenth [A]mendment right[] to be able to develop [his] family business freely without the obstruction and discrimination" of the defendants, and he alleges that the UB defendants have abridged that right.  Docket Item 4 at 4.  Especially for a pro se plaintiff, that is enough at the pleading stage.[7]

---

[7] For the same reasons, the UB defendants' argument that the action must be dismissed because Gordon "does not have a constitutional right to a business plan" also fails.  Docket Item 25-1 at 16.  Construing the amended complaint liberally, Gordon

To show the second element, sometimes called "traceability," "the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir.1992)); *see also Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (holding that for plaintiff's injury to "be 'fairly traceable to the challenged action of the defendant,' . . . 'there must be a causal connection between the injury and the conduct complained of'" (quoting *Lujan*, 504 U.S. at 561)). The UB defendants argue that to the extent Gordon has been injured, he cannot "show[] how an injury is traced directly to" them. Docket Item 25-1 at 15. They claim that the allegation that "defendants" discriminated against him is insufficient to trace the alleged discrimination to them specifically. *Id.*

But the amended complaint, read liberally, certainly alleges an injury traceable to the UB defendants. Gordon alleges that the Blackstone Launchpad Program is UB's "entrepreneurship program," that Borden is its director, and that Gordon was "blocked out of [UB]'s [e]ntrepreneurship ecosystem and their [sic] funding." Docket Item 4 at 3-4. He explicitly says that Borden herself participated in the discrimination, including by the campaign called "This is what an entrepreneur looks like" which featured "East Indian, white, and female students." *Id.* at 3. Again, that is enough at the pleading stage.

The third element, called "redressability," requires "a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co.,*

---

alleges that he has a right to be free from discrimination in his participation in UB's entrepreneurship program, not simply that he has a constitutional right to develop his business. Docket Item 4 at 4.

15

*LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008). "There is no redressability where such depends on an independent actor who retains 'broad and legitimate discretion [that] the courts cannot presume either to control or to predict.'" *Neary v. Weichert*, 489 F. Supp. 3d 55, 67 (E.D.N.Y. 2020) (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

The UB defendants argue that Gordon cannot establish redressability because "it is not likely that the Court will issue a favorable decision to redress the injury." *Id.* But likelihood of success is not the standard to establish standing; rather, the question is whether the injury itself "can be remedied by the requested relief." *See W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 107. Gordon seeks damages, Docket Item 1 at 6[8], an appropriate remedy given the allegation that Gordon was denied funding for his business venture.

In sum, viewing the complaint in the light most favorable to Gordon, he has pleaded facts sufficient to establish standing against the UB defendants.

### C.    Racial Discrimination Claim

The UB defendants also argue that Gordon has not "allege[d] sufficient facts to establish a[] [Fourteenth] Amendment violation because of his race." Docket Item 25-1 at 18-19.

To begin, most of the caselaw that the UB defendants cite addresses what a plaintiff must "prove" to be successful on an equal protection claim, not what must be

---

[8] Gordon's amended complaint, Docket Item 4, is the operative pleading in this action. Gordon, however, does not request specific relief in his amended complaint. In light of Gordon's pro se status the Court will consider the request for relief from the original complaint.

16

pleaded to survive a motion to dismiss.  *See id.* at 19-20.   Gordon does not need to "prove" anything at this stage; he needs only to allege facts sufficient to plead a plausible claim.  *See Iqbal*, 556 U.S. at 678.  So the support that the UB defendants cite for their argument is inapposite.  And, in fact, Gordon's allegations are sufficient to allege a section 1983 equal protection claim.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under [section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen*, 126 F.3d at 405.  "[T]o maintain an equal protection claim, a plaintiff must 'show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 110 (N.D.N.Y. 2016) (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)).

### 1.    Claims against UB

UB argues that its use of the "This is what an entrepreneur looks like" slogan partnered with a campaign featuring "an 'East Indian and White' individual . . . [is] not enough to support a claim of intentional race discrimination."  Docket Item 25-1 at 20. And that may be correct.  But Gordon alleges more than that.

17

Gordon alleges that UB employees made racially driven comments dissuading him from growing his business venture.  Docket Item 4 at 3.  For instance, when Gordon likened his business venture to Google, Shauku, "a program director with the [UB] Regional Institute," told him that the founders of Google "came from communities with deep pockets."  *Id.*  Along the same lines, Gordon says that he was encouraged to "locate [his] business [in] the predominantly [B]lack neighborhoods on the East Side of Buffalo and off [UB's] campus."  *Id.* at 4.  Gordon also says that he was denied support, opportunities, and funding from UB programs because of his race.  *Id.* at 3-4.  Again, that is sufficient to plead a plausible claim for race discrimination, and UB's motion to dismiss Gordon's race discrimination claims is therefore denied.

### 2.      Claims against Borden

"A prerequisite to a claim for damages under [s]ection 1983 . . . is a defendant's 'personal involvement' in the alleged constitutional violation."  *Carwell v. City of New York*, 2023 WL 419182, at *5 (S.D.N.Y. Jan. 26, 2023) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)).  To show such involvement, "the plaintiff must directly plead and prove that 'each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  "A defendant in a [section] 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (alteration, citation, and internal quotation marks omitted.  Under section 1983, personal involvement

> for state actors in their personal capacities may be shown through action
> that causes a deprivation of rights as well as when a supervisor: (1) fails to

18

remedy the violation after having been informed of it; (2) creates or tolerates a policy or custom under which the violation occurred, (3) was grossly negligent in supervising subordinates who commit the violation; or (4) fails to act on information indicating that the violation was occurring.

*Gibson v. County of Suffolk*, 2022 WL 1063017, at *12 (E.D.N.Y. Feb. 18, 2022).

The amended complaint alleges that Borden, the Director of UB's Blackstone Launchpad Program, met with Gordon and invited him to participate in the program. Docket Item 4 at 3. But as Gordon worked with Borden, the presence of "discrimination and discriminatory actions" became "clear." *Id.* Gordon points to one specific example: Borden's promotion of the slogan "This is what an entrepreneur looks like" which involved a campaign featuring "predominantly . . . East Indian, white, and female students." *Id.* The campaign was "centered around one particular entrepreneur, . . . a white male" who was featured at programming events. *Id.* at 4. In fact, Borden wore a t-shirt bearing this slogan at a "programming event that highlighted" this entrepreneur. *Id.* The amended complaint suggests that Borden favored students of certain races, ethnic groups, and genders over others, and that Gordon, "[a]s a [B]lack man," was subject to "obstruction and discrimination" because of that. *Id.*

In light of those allegations, Gordon has sufficiently pleaded that Borden "create[d] or tolerate[d] a policy or custom" that promoted the unfair treatment of Black males in UB's entrepreneurship program. *See Gibson*, 2022 WL 1063017, at *12. Whether Gordon can sustain those claims is a question for another day. But for now, Borden's motion to dismiss the equal protection claim is denied.[9]

---

[9] In their reply, the UB defendants contend that Gordon's opposition brief "attempts to add a new retaliation claim" to the amended complaint. *See* Docket Item 28 at 4; *see also* Docket Item 27 at 27 (Gordon discussing that retaliation is a "[c]ommon [a]pplication" of section 1983). They argue that "[t]o the extent [Gordon] tries

## D.    Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  A right is clearly established if it "is 'sufficiently clear that every reasonable official would have understood that [his actions] violate[d] that right.'"  *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Qualified immunity is an affirmative defense that may result in dismissal under Rule 12(b)(6) only "if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998).  As such, it is rarely appropriate to grant a motion to dismiss based on qualified immunity, and summary judgment is usually the vehicle for such a ruling.  *See Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order) ("[A] defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful." (alteration and internal quotation marks omitted)).

UB and Borden contend they are "entitled to qualified immunity" here.  *See* Docket Item 25-1 at 21.  But as addressed above, Gordon has alleged plausible constitutional violations: that he was denied certain opportunities and funding because of his race.  Taking Gordon's allegations as true, "the Court cannot conclude that the . .

---

to assert a claim of retaliation, that claim must also fail."  *Id.*  But Gordon "clarif[ies] that no new claim has been introduced" and that he "has not amended the complaint or asserted any additional causes of action."  Docket Item 30 at 1-2.  As such, the Court need not address the issue of whether Gordon may bring a retaliation claim or whether such a claim is viable.

20

. defendants' actions did not violate clearly established law, or that it was objectively reasonable for them to believe their actions did not violate clearly established law." *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 127-28 (W.D.N.Y. 2022) citing *Barrella v. Village of Freeport*, 43 F. Supp. 3d 136, 182 (E.D.N.Y. 2014) (finding that qualified immunity cannot apply because "the law is well-settled that intentional discrimination is illegal"), *aff'd*, 814 F.3d 594 (2d Cir. 2016). Therefore, the defendants are not entitled to qualified immunity, at least for now.

## III.    MOTION TO AMEND

Gordon also moved to amend his amended complaint, and he has included a proposed second amended complaint with that motion. Docket Item 17. In the proposed second amended complaint, Gordon seeks to "include The Blackstone Charitable Foundation . . . as an additional defendant." *Id.* at 20.

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave [to amend] when justice so requires." This "permissive standard . . . is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Loreley Financing (Jersey) No. 3. Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (citation and internal quotation marks omitted). The decision "to grant or deny leave to amend" is nevertheless committed to "the sound discretion of the district court," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[a] district court has discretion to deny leave for good reason, including futility." *Id.* "[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).

21

Blackstone argues that granting the motion to amend and adding The Blackstone Charitable Foundation to this action would be futile because the proposed second amended complaint does not state a plausible claim against The Blackstone Charitable Foundation under section 1983.  Docket Item 19 at 7-8.  This Court agrees.

As noted above, to state a claim under section 1983 a "plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen*, 126 F.3d at 405.  "Because the United States Constitution regulates only the [g]overnment, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."  *Fabrikant*, 691 F.3d at 206 (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).  And a private party "acts under color of state law" and may incur liability under section 1983 only "when the private actor is a willful participant in joint activity with the [s]tate or its agents."  *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (citations and internal quotation marks omitted).  "A private actor can only be a willful participant in joint activity with the [s]tate or its agents if the two share some common goal to violate the plaintiff's rights."  *Id.* at 85 (citation and internal quotation marks omitted).  "A merely conclusory allegation that a private entity acted in concert with a state actor [will] not suffice."  *Ciambriello*, 292 F.3d at 324 (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).

Gordon alleges that The Blackstone Charitable Foundation "serves as the funding entity for the Blackstone Launchpad [P]rogram, which is operated in collaboration with Blackstone Inc."  Docket Item 17 at 20.  The proposed second

22

amended complaint asserts that "[g]iven th[at] relationship and [The Blackstone Charitable] Foundation's integral role in the operation and funding of the Blackstone Launchpad [P]rogram," it is necessary to include them as a party to the action. *Id.*

Other than alleging that The Blackstone Charitable Foundation has a "relationship" with UB's Blackstone Launchpad Program and funds that program, Gordon says nothing about how The Blackstone Charitable Foundation—or anyone associated with it—violated his rights. *See* Docket Item 17 at 20. He does not allege facts suggesting that the Blackstone Charitable Foundation acted jointly with UB to discriminate against him or that they otherwise "share[d] some common goal to violate [his] rights." *See Betts*, 751 F.3d at 85. Nor does he say that anyone employed by or associated with the foundation did anything that injured him. Instead, he alleges that UB and those associated with it were the culprits.

What is more, it is unclear how simply providing funding to those who allegedly violated Gordon's rights deprived Gordon of any constitutional rights. And the only allegation in the proposed second amended complaint regarding The Blackstone Charitable Foundation was that it funded the UB Launchpad Program, *see* Docket Item 17 at 20, an organization that Gordon alleges discriminated against him. Without more, that is insufficient to include The Blackstone Charitable Foundation as a defendant.

Because Gordon has failed to allege that The Blackstone Charitable Foundation violated his rights while acting under the color of state law—indeed, because he has not alleged how The Blackstone Charitable Foundation or anyone employed by it injured him in any way—anything that the proposed second amended complaint would add to the amended complaint is futile. Gordon's motion to amend therefore is denied.

23

Nevertheless, in light of his pro se status, Gordon may again amend his complaint if he believes that any Blackstone entity—or anyone employed by any Blackstone entity—did anything that injured him.

## CONCLUSION

For the reasons explained above, Blackstone's motion to dismiss, Docket Item 11, is GRANTED.  The UB defendants' motion to dismiss, Docket Item 25, is DENIED, and Gordon's motion to amend the complaint, Docket Item 17, is DENIED as well.  And Gordon's motion to recuse, Docket Item 29, is DENIED.

The Clerk of the Court shall terminate Blackstone Inc. as a defendant in this action.

Gordon has 30 days from the date of this decision and order to amend his complaint against any Blackstone entity that has done anything to injure him—that is, something more than simply provide funding to those who Gordon alleges abridged his rights.

Gordon has 90 days from the date of this decision and order to properly serve any defendants who have not yet been served.  All defendants have 21 days after they have been served to answer, move against, or otherwise respond to the amended complaint or second amended complaint

SO ORDERED.

Dated:   March 31, 2026
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE